UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

DAVID SIEFERS; LANE SIEFERS; and RILEY SIEFERS, a minor,

        Plaintiffs,

v.

PACIFICARE LIFE ASSURANCE COMPANY,

        Defendant.

2:08-CV-00269-PMP-PAL

ORDER

        Presently before the Court is Defendant PacifiCare Life Assurance Company's Motion for Summary Judgment (Doc. #27), filed on December 23, 2009. Plaintiffs filed an Opposition (Doc. #32) on February 8, 2010. Plaintiffs filed an Errata to the Opposition (Doc. #33) on February 9, 2010. Defendant filed a Reply (Doc. # 34) on February 18, 2010.

**I. BACKGROUND**

        On April 24, 2007, Lane Siefers ("Lane") submitted an application for insurance coverage for her four-year-old daughter, Riley Siefers ("Riley") to PacifiCare Life Assurance Company ("PacifiCare"). (Defendant Pacificare's Motion for Summary Judgment ("Def.'s Mot.") (Doc. #27), Ex. 2.) The first page of the application includes a number of terms and conditions. (Id. at PAC0011.) The second condition states:

> I certify that the answers in any part of this application are true and complete. I acknowledge that the discovery of facts known and not disclosed may result in the rescission of my PacifiCare Individual Plan Agreement. I alone am responsible for the accuracy and completeness of the application and related documents. I understand that neither I,

> nor my Dependents, will be eligible for benefits if any known material information is false or incomplete, and that coverage may be rescinded based on such a finding. If rescinded, the contract will be deemed to never have existed, and I will be financially responsible for any cost incurred while under the plan.

(Id.)

The fourth condition states, "I understand that there is no coverage unless an application is approved by either PacifiCare of Nevada, Inc. or PacifiCare Life Assurance Company Underwriting Department." (Id.) The seventh condition states, "I understand that I am responsible for reporting to PacifiCare or PacifiCare Life Assurance Company any changes in the health status which occur before the effective date of the PacifiCare Individual Plan Agreement." (Id.) On the bottom of every page of the application it states, "Note: Until you have received written approval of this application, do not cancel any insurance you may have." (Id.)

In the application, Lane states that in the past two years, Riley saw a physician only for allergies. (Id. at PAC009). The application also asks a number of questions regarding Riley's medical history. (Id.) One of the questions asks whether Riley has been "aware of, evaluated, diagnosed, treated or advised regarding any other conditions or injuries not listed within the last ten (10) years?" to which Lane responded no. (Id.) Above the application's signature line it states "[t]his questionnaire will be used by PacifiCare of Nevada, Inc. or PacifiCare Life Assurance Company in evaluating the applicant's eligibility for guaranteed individual health insurance. It does not constitute an offer of coverage." (Id. at PAC0010.) Lane signed and submitted the application, and paid a deposit premium of $84.00. (Id. at PAC0007.)

On May 4, 2007, Lane took Riley to see Dr. Shideh Sheibani ("Sheibani") for a preschool physical. (Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") (Doc. #32), Ex. 3 at 15.) During the physical, Sheibani informed Lane that Riley was tall for her age, had breast bud development, and some pubic hair. (Def.'s Mot., Ex. 8 at 161, 168.) Sheibani

1  advised Lane that Riley should be seen by a pediatric endocrinologist.  (Id. at 168.)
2  Sheibani also ordered lab work for Riley and a hand x-ray to determine Riley's bone age.
3  (Id. at 172-73.)
4       On May 11, 2007, Cheryl Lanke ("Lanke"), an Underwriting Assistant at
5  PacifiCare, conducted a follow-up underwriting call regarding Riley's application.  (Id., Ex.
6  5 at ¶ 3.)  During the call, Lanke asked about Riley's May 4 doctor's visit.  (Id., Ex. 5,
7  Attach A.)  When asked, Lane told Lanke that the doctor did not recommend a follow-up
8  for any reason.  (Id. at 5.)  Lane also told Lanke that the doctor did not recommend any
9  testing or treatments.  (Id.)  When asked, Lane told Lanke that Riley did not have any
10 appointments scheduled with any doctor for any reason and that Riley had seen doctors only
11 for her allergies.  (Id.)  Finally, Lane told Lanke that there was no other medical information
12 that had not been indicated on the application or mentioned in the interview and that Riley
13 was perfectly healthy except for allergies.  (Id. at 6.)  Thereafter, PacifiCare issued a policy
14 insuring Riley with an effective date of May 15, 2007.  (Id., Ex. 3 at PAC0016.)  PacifiCare
15 attached Lane's original application for insurance to the policy.  (See id., Ex. 3.)
16      Less than three months after PacifiCare issued the coverage, a claim was
17 submitted relating to Riley being seen by a doctor on May 4, 2007 for sexual precocity, a
18 medical term for premature development.  (Id., Ex. 4 at ¶ 7; Pl.'s Opp'n, Ex. 3 at 19-20.)
19 As a result, Lynnette Thiry ("Thiry"), an Underwriter Supervisor for PacifiCare, performed
20 a claim review to determine whether the claim was for a pre-existing condition and whether
21 Lane fully and accurately had disclosed Riley's medical history and condition during the
22 application process.  (Def.'s Mot., Ex. 4 at ¶¶ 7-8.)  As part of the claim review, Thiry was
23 provided with Riley's pre-application medical history.  (Id. at ¶ 8.)  Thiry also was provided
24 with medical records gathered by PacifiCare's claim department after the claim was
25 submitted for payment, as well as the information related by Lane to PacifiCare during the
26 May 11, 2007 follow-up underwriting call.  (Id.)  Thiry discovered that Lane had failed to

3

disclose that Sheibani advised Lane to set up an appointment for Riley to see a pediatric endocrinologist at Riley's May 4 doctor's appointment. (Id. at ¶ 15.) Additionally, Thiry discovered that Lane had failed to disclose that Sheibani ordered lab tests and bone x-rays for Riley. (Id.) Thiry concluded that this undisclosed information was material to the risk PacifiCare was being asked to assume in providing health insurance coverage to Riley. (Id.) According to Thiry, had the referral and ordered tests been truthfully and accurately disclosed by Lane during the application process, PacifiCare would not have issued Riley health insurance. (Id. at ¶ 16.)

On August 30, 2007, PacifiCare sent Lane a letter informing her that it was rescinding Riley's health insurance based on Lane's failure to disclose Riley's "past medical history of Sexual Precocity, ordered Endocrinologist referral, labs and X-ray of the hand for bone age" in the May 11, 2007 underwriting follow-up call. (Id., Ex. 6.) In the letter, PacifiCare informed Lane that it was rescinding Riley's coverage retroactively to the effective date of May 15, 2007, and that it would return all premiums received. (Id.)

On June 28, 2008, Lane and David Siefers, as guardian ad litem of Riley, brought an action in Nevada state court against PacifiCare and Abraham D. Forouzan Insurance and Financial Services, Inc.[1] (Pet. for Removal (Doc. #1), Ex. A at 8.) Plaintiffs allege (1) breach of contract, (2) tortious breach of the duty of good faith and fair dealing, and (3) breach of Nevada Revised Statute § 686A.310 against Defendant PacifiCare. (Id. at 8-18.) PacifiCare subsequently removed the action to federal court. (Pet. for Removal.)
///

---

[1] Defendant Abraham D. Forouzan Insurance and Financial Services, Inc. ("Forouzan") is an independent insurance broker who has authority to submit health insurance applications to PacifiCare and who sold the policy in dispute in this action. (Pet. for Removal (Doc. #1) at 9; Def. PacifiCare's Ans. (Doc. #4) at ¶ 3.) Defendant Forouzan is not a party to this Motion.

4

1        Defendant PacifiCare now moves for summary judgment against Plaintiffs.
2   PacifiCare contends it is not liable for breach of contract because it was entitled, as a matter
3   of law, to rescind the health insurance policy issued to Riley due to Lane's
4   misrepresentations during the May 11, 2007 follow-up underwriting call.  Additionally,
5   PacifiCare argues Plaintiffs fail to establish a claim for bad faith because the undisputed
6   facts establish that there was a reasonable basis for disputing the coverage.  PacifiCare also
7   contends Plaintiffs fail to provide any evidence that PacifiCare violated Nevada Revised
8   Statute § 686A.310.  Finally, PacifiCare argues that Plaintiffs cannot maintain an action
9   against PacifiCare for punitive damages because there is no evidence that PacifiCare acted
10  with oppression, fraud, or malice in rescinding the policy issued to Riley.
11       In response, Plaintiffs contend that PacifiCare's retention of Lane's premium
12  payment along with the application for coverage created temporary insurance beginning on
13  April 24, 2007.  As such, Plaintiffs argue that nothing that Lane said in the May 11, 2007
14  phone call could have disturbed the already in-force contract.  Alternatively, Plaintiffs
15  contend PacifiCare breached its contract when it rescinded the policy because PacifiCare
16  failed to establish Lane intended to commit fraud in her misrepresentations, as required for
17  rescission by the terms of the policy.   Additionally, Plaintiffs argue that PacifiCare
18  breached its statutory duty under Nevada Revised Statute § 686A.310 by improperly
19  investigating Plaintiffs' claim and rescinding Riley's policy.  Plaintiffs also argue
20  PacifiCare breached the duty of good faith and fair dealing it owes to Plaintiffs when
21  PacifiCare made a promise to insure Riley without the intention of performing.  Moreover,
22  Plaintiffs argue that the reasonableness of the insurer's denial with respect to a breach of
23  the duty of good faith and fair dealing claim is a jury question.  Finally, Plaintiffs contend a
24  reasonable jury could award punitive damages by finding that PacifiCare's conduct was
25  reprehensible.
26  ///

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts that show a genuine issue for trial." Id. (internal quotation omitted). A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party. Leisek, 278 F.3d at 898.

## III. DISCUSSION

### 1. Breach of Contract

PacifiCare contends it was entitled to rescind the policy it issued to Riley, and therefore is not liable for breach of contract, because of the numerous misrepresentations Lane made in the May 11 underwriting follow-up phone call. Specifically, PacifiCare argues Lane told Lanke that Sheibani had not recommended a follow-up appointment for any reason and had not scheduled any testing or treatments at Riley's May 4 doctor's appointment. PacifiCare contends these statements were false because, in fact, Sheibani ordered lab tests and a hand x-ray for Riley, and she advised Lane to make an appointment with an endocrinologist based on her diagnosis that Riley suffered from premature development. PacifiCare argues the misrepresentations were material because, had PacifiCare known what transpired at the May 4 doctor's appointment, it would not have

6

1  insured Riley.

2  Moreover, PacifiCare contends it does not need to establish Lane intended to defraud PacifiCare by making the above misrepresentations to validly rescind the policy. Rather, PacifiCare argues it needs to establish only that Lane knowingly made the misrepresentations, which it has. Additionally, PacifiCare contends Plaintiffs' reliance on the concept of temporary insurance is inapplicable to the issues in this case because PacifiCare did not provide Lane with a conditional receipt upon completion of the application. PacifiCare also argues that Nevada law does not require that PacifiCare have attached the telephone interview transcript to the policy.

In response, Plaintiffs argue that Lane's completion of the insurance application and submission of her first premium payment created temporary insurance on April 24, 2007. As such, Plaintiffs contend that any statements Lane made in the May 11 phone call with Lanke are irrelevant, as the effective date of Riley's insurance was April 24, 2007. Additionally, Plaintiffs argue that PacifiCare failed to attach the telephone interview to the policy, as required by Nevada law. As such, PacifiCare is precluded from considering the May 11 telephone interview in its decision to rescind Riley's policy.

Generally, "statements in insurance applications are representations, not warranties," and "inaccuracies [ ] in such information will not preclude recovery." Randono v. CUNA Mut. Ins. Group, 793 P.2d 1324, 1326 (Nev. 1990) (citing Nev. Rev. Stat. § 687B.110). However, an insurer may rescind a policy if the insured makes misrepresentations, omissions, incorrect statements or conceals facts that (1) are fraudulent; or (2) are "[m]aterial either to the acceptance of the risk, or to the hazard assumed by the insurer;" or (3) that

> [t]he insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or

7

1         contract or otherwise.

2 Id. (citing Nev. Rev. Stat. § 687B.110).

3         Viewing the facts in the light most favorable to Plaintiffs, no question of material fact remains that PacifiCare was entitled to rescind the insurance policy issued to Riley based on Lane's misrepresentations made in the May 11 follow-up underwriting phone call. Plaintiffs do not dispute that the May 11 phone call was prior to the policy's stated effective date of coverage. Additionally, although Plaintiffs dispute whether Lane's statements were material misrepresentations, Plaintiffs do not, and cannot, dispute that Lane did not inform Lanke that Sheibani had advised Lane to take Riley to an endocrinologist and to set up an appointment for Riley to get lab work and a hand x-ray. Additionally, PacifiCare provides an affidavit from its underwriting supervisor that Lane's misrepresentations were material to PacifiCare's acceptance of risk and PacifiCare would not have issued the policy to Riley had PacifiCare been aware that Sheibani diagnosed Riley with sexual precocity prior to the effective date of coverage. Plaintiffs, on the other hand, provide no evidence to establish that Lane's misrepresentations were not material.

        Instead, Plaintiffs simply contend that the May 11 follow-up underwriting call is irrelevant and the Court therefore should not consider it. As an initial matter, Plaintiffs' reliance on Prudential Insurance Company of America v. Lamme, 425 P.2d 346 (Nev. 1967), to establish that PacifiCare's receipt of Lane's application and premium payment created temporary insurance is misplaced. In Prudential, the decedent submitted a life insurance policy application to the insurer and the insurer accepted his first premium payment and provided him with a conditional receipt. Id. at 347. The conditional receipt provided that the insurance coverage would be effective on a specific date provided that the insurer was satisfied that on that date the applicant was an insurable risk under the insurer's underwriting rules. Id. The Court found that the conditional receipt created a temporary contract of insurance because where "nothing is said about the complicated and legalistic

8

phrasing of the receipt, and the agent accepts an application for insurance together with the first premium payment, the applicant has a reason to believe that he is insured." Id. at 348.

Unlike in Prudential, Plaintiffs provide no evidence that PacifiCare provided Lane with a conditional receipt upon her submission of the insurance application and premium payment to establish that temporary insurance was created on April 24, 2007. Additionally, a reasonable trier of fact could not conclude that Lane had reason to believe she was insured upon submission of the application as the insurance application provided numerous disclaimers that submission of the application did not constitute conditional coverage. (See Defs.' Mot., Ex. 2 at PAC007-0010 ("Until you have received written approval of this application, do not cancel any insurance you may have."); PAC 0010 ("This questionnaire . . . does not constitute an offer of coverage.").) Thus, Plaintiffs' argument that temporary insurance was created on April 24, 2007 fails as a matter of law.

Plaintiffs' argument that PacifiCare has failed to establish Lane acted with an intent to defraud is similarly without merit. The policy provides that PacifiCare "may terminate or rescind the Policy or a Covered Person's coverage thereunder, if . . . [s]uch Covered Person knowingly provides the Company with fraudulent information" and "[s]uch information materially affects the Covered Person's eligibility for enrollment or benefits under the Policy." Thus, the policy delineates a similar standard to that in Nevada Revised Statute § 687B.110. The policy does not require, as Plaintiffs suggest, that Lane have acted with an intent to defraud PacifiCare.

Plaintiffs' argument that the Court should not consider the May 11 telephone interview because PacifiCare failed to attach it to the policy pursuant to Nevada Revised Statute § 687B.100 is incorrect. Nevada Revised Statute § 687B.100 requires that the insurance company attach the insurance application to the policy to be admissible in court, and Plaintiffs do not dispute that this occurred. Rather, Plaintiffs make a policy argument that Nevada Revised Statute § 687B.100 also should apply to the telephone interview

9

because the purpose of the law is to provide the insured an opportunity to review and correct any errors. See Metzinger v. Manhatten Life Ins. Co., 455 P.2d 391, 394 (Cal. 1969). However, the statute does not require the insurer attach anything more than the application to the policy. Moreover, it would be unduly burdensome to require an insurer to attach every conversation the insurer's underwriter engaged in prior to issuing insurance. Lane made affirmative misrepresentations and should not be able to benefit from those misrepresentations based on a policy argument not found in law. Finally, Plaintiffs' argument that the policy fails to include an "entire contract" provision is irrelevant as the effect of such failure is that the Court would read the clause into the contract as a matter of Nevada law, which is what the parties are asking this Court to do. See Nev. Rev. Stat. § 689A.340. Accordingly, the Court will grant Defendant PacifiCare's Motion for Summary Judgment with respect to Plaintiffs' breach of contract claim.

**2. Breach of the Duty of Good Faith and Fair Dealing**

PacifiCare contends Plaintiffs cannot maintain a claim for breach of the duty of good faith and fair dealing because PacifiCare had a reasonable basis for rescinding the policy due to Lane's material misrepresentations. PacifiCare argues that Plaintiffs fail to offer a single act or fact establishing PacifiCare acted in bad faith. Additionally, PacifiCare contends that the question of whether PacifiCare's decision to rescind the policy was reasonable is a question for the jury to resolve only when there are material facts in dispute. Plaintiffs argue that because no such questions of material fact are before the Court, it is proper for the Court to grant summary judgment in PacifiCare's favor as to Plaintiffs' bad faith claim.

In response, Plaintiffs contend PacifiCare breached its duty of good faith and fair dealing by lulling Plaintiffs into the belief that Riley was an acceptable insurance risk, causing Plaintiffs to cancel their existing coverage, and then subsequently denying Riley's claims because of an irrelevant telephone conversation in which Lane made

misrepresentations about Riley's health.  Additionally, Plaintiffs argue that where an insurer denies payment of benefits or rescinds a policy without proper cause, the jury resolves the dispute over whether such a denial was reasonable.  As such, Plaintiffs contend summary judgment is inappropriate.

In Nevada, a finding of bad faith requires evidence of:

> (1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial.

Garcia v. Dawahare, 608 F. Supp. 2d 1228, 1234 (D. Nev. 2008) (quotation omitted). "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'"  Feldman v. Allstate Ins. Co, 322 F.3d 660, 669 (9th Cir. 2003) (applying California law) (quotation omitted).

Viewing the facts in the light most favorable to Plaintiffs, no question of material fact remains that PacifiCare acted reasonably in deciding to deny Riley coverage and rescind the policy.  Plaintiffs provide no evidence to support their contention that PacifiCare lulled Plaintiffs into believing Riley was an acceptable insurance risk.  Additionally, as discussed above, Plaintiffs' assertion that the Court is precluded from considering Lane's misrepresentations in the May 11 follow-up underwriting phone call is without merit.  No reasonable trier of fact could conclude that PacifiCare was not entitled to rescind the policy based on Lane's misrepresentations.  The Court therefore will grant Defendant PacifiCare's Motion for Summary Judgment as to Plaintiffs' breach of the duty of good faith and fair dealing claim.

### 3. Breach of Nevada Revised Statute § 686A.310

PacifiCare contends there is no evidence that it violated any handling standard articulated in Nevada Revised Statute § 686A.310.  PacifiCare argues it has had no claims

handling communications with Plaintiffs beyond that which was necessary to investigate Riley's claim and rescind her coverage once PacifiCare discovered material misrepresentations. In response, Plaintiffs contend PacifiCare misrepresented the insurance policy's terms, failed to adequately, promptly, and fairly investigate Plaintiffs' claims, failed to pay benefits owed when liability was reasonably clear, and has implemented a business practice of forcing its insureds to file a lawsuit to recover benefits owed under PacifiCare's policy.

Nevada Revised Statute § 686A.310 supplies a list of unfair practices related to the manner in which an insurer handles an insured's claim. Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 863 F. Supp. 1237, 1243 (D. Nev. 1994). For example, the statute prohibits an insurer from "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue[,]" and "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies." Nev. Rev. Stat. § 686A.310. Although similar to a common law bad faith claim, Nevada Revised Statute § 686A.310 is broader in scope. Pioneer, 863 F. Supp. at 1243.

Viewing the facts in the light most favorable to Plaintiffs, no question of material fact remains to establish that PacifiCare breached its statutory duties. Although Plaintiffs assert various acts that, if true, may constitute violations of Nevada Revised Statute § 686A.310, Plaintiffs fail to provide any evidence in the record to support such assertions. The Court therefore will grant Defendant PacifiCare's Motion for Summary Judgment as to Plaintiffs' breach of statutory duties claim.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant PacifiCare's Motion for Summary Judgment (Doc. #27) is hereby GRANTED.

///

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment in favor of Defendant PacifiCare and against Plaintiffs David Siefers, Lane Siefers, and Riley Siefers.

IT IS FURTHER ORDERED that the Clerk of Court shall seal Defendant's Motion (Doc. #27), Exhibit A and Plaintiffs' Opposition (Doc. #32), Exhibits 1 and 5 because Plaintiff Riley's personal social security number is unredacted in the insurance application.

IT IS FURTHER ORDERED that the parties shall file a redacted version of Defendant's Motion (Doc. #27), Exhibit A and Plaintiffs' Opposition (Doc. #32), Exhibits 1 and 5 by August 25, 2010.

DATED: August 6, 2010

_____
PHILIP M. PRO
United States District Judge